# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
    **Plaintiff,**

v.                                                         **Case No. 06-CR-50**

**LARRY WHITE**
    **Defendant.**

---

## SENTENCING MEMORANDUM

The government charged defendant Larry White with conspiracy to distribute cocaine (count one) and distribution of 500 grams or more of cocaine (count two). Defendant pleaded guilty to count two, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's base offense level at 30 based on a relevant conduct drug weight of 3.5 to 5 kilograms, U.S.S.G. § 2D1.1(c)(5), then subtracted 2 under the safety valve provision, §§ 2D1.1(b)(7); 5C1.2, and 3 for acceptance of responsibility, § 3E1.1. Coupled with his criminal history category of I, the PSR recommended an imprisonment range of 57-71 months. Defendant objected to the absence of a mitigating role reduction under § 3B1.2 and argued for a below-guideline sentence, while the government opposed any such reduction and advocated a sentence within the range. In this memorandum, I set forth the reasons for the sentence imposed.

### I. BACKGROUND

Defendant, a City of Milwaukee police officer, assisted Melvin Williams, a long-time acquaintance, and Lawrence Matthews, his brother-in-law, in cocaine distribution. Williams, a Milwaukee dealer, began receiving cocaine from Matthews, who lived in the Chicago-area,

in 2004. Defendant aided the enterprise by transporting cocaine and money between the two on a couple of occasions in 2005.[1] In January 2006, he assisted in negotiating a deal for one kilogram and transferred the money and cocaine between Matthews and Williams in his Milwaukee home. Because Williams was by that time cooperating with the FBI, defendant and Matthews were arrested and charged with conspiracy to distribute cocaine. Defendant initially set the case for trial, but after Matthews also agreed to cooperate against him, he decided to plead guilty and the case proceeded to sentencing.

## II. SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005). First, I determine the advisory guideline range, resolving any disputes necessary to that determination. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

## III. DISCUSSION

### A. Guideline Determination

The parties stipulated to the drug weight figure set forth in the PSR and agreed to the reductions under § 2D1.1(b)(7) and 3E1.1. However, they disputed whether defendant was entitled to a reduction for mitigating role in the offense under § 3B1.2. That guideline

---

[1]The parties did not agree on precisely how many trips defendant made; he said two, the government's witnesses said three to five. Because resolution of the dispute did not affect the guidelines or the sentence, I made no specific finding on the issue. The parties agreed on the amount of cocaine involved.

2

provides for a range of downward adjustments for those participants in an offense who play a part in its commission that makes them "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). The guideline provides for a 4 level reduction for a "minimal participant," a 2 level reduction for a "minor participant," and a 3 level reduction for cases falling in between. The "minimal participant" adjustment applies to:

> defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

U.S.S.G. § 3B1.2 cmt. n.4. A "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. The defendant bears the burden of showing by a preponderance of the evidence that he is entitled to a reduction under § 3B1.2. United States v. Mendoza, 457 F.3d 726, 729 (7th Cir. 2006); United States v. Mitchell, 178 F.3d 904, 910 (7th Cir. 1999).

In the present case, defendant argued that he qualified for the minimal participant reduction because his role was limited to twice transporting cocaine from Chicago to Milwaukee and allowing cocaine to be stored in his house on one occasion. He stated that there was no evidence that he engaged in drug trafficking himself, and that the substantial phone contact between himself and Matthews could be explained by their familial relationship.

Defendant was not entitled to the reduction on these facts. He was held responsible under § 2D1.1(c) only for those drugs that he personally transported and stored. While application note 3(A) states that a defendant is not precluded from consideration for the

adjustment under these circumstances, the note does not provide that a courier <u>always</u> gets the reduction. He must still show that he is entitled to the reduction as a factual matter. <u>See United States v. Rodriguez-Cardenas</u>, 362 F.3d 958, 960 (7th Cir. 2004). Here, defendant played an important role in the conduct for which he was held responsible. As the Seventh Circuit has repeatedly noted, couriers are vital in a distribution scheme, <u>see, e.g.</u>, <u>Mendoza</u>, 457 F.3d at 729; <u>United States v. Hamzat</u>, 217 F.3d 494, 498 (7th Cir. 2000), and defendant's position as a police officer made him quite useful as a transporter and his home as a storage facility. For instance, his occupation made it less likely that local law enforcement would take an interest in his house or car. Further, while Matthews and Williams had significant dealings without defendant's involvement, he was not held responsible for their activity under the guidelines. The evidence showed that defendant had full knowledge of the activities of the three when they worked together, and he earned $1000 for each trip or transaction he made. Finally, defendant was deeply involved in the negotiations leading up to, as well as the consummation of, the January 2006 deal for one kilogram. He set the price, obtained the buy money ($22,000) from Williams, gave the money to and obtained the cocaine from Matthews, then provided the drugs to Williams, all at his home. Therefore, for all of these reasons, I awarded no reduction under § 3B1.2. <u>See, e.g.</u>, <u>Mendoza</u>, 457 F.3d at 730 (denying § 3B1.2 reduction where the defendant's role as a courier was to shield the principal's identity from law enforcement); <u>United States v. Laufle</u>, 433 F.3d 981, 986 (7th Cir. 2006) (denying reduction where defendant stored and drove drug shipments, and was paid for his efforts); <u>United States v. Cain</u>, 155 F.3d 840, 844 (7th Cir. 1998) (denying reduction, despite the defendant's claim that he never personally hand-delivered drugs or money, where the court found that the defendant

4

Case 2:06-cr-00050-LA    Filed 10/30/06    Page 4 of 10    Document 61

provided necessary services to the conspiracy by driving others, renting the car used to deliver drugs, and renting the apartment used to store them).

Neither party requested a departure, so I proceeded to imposition of sentence under § 3553(a).

**B.     Section 3553(a)**

In imposing sentence, the court must consider the factors set forth in § 3553(a), which include:

>   (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2)    the need for the sentence imposed–
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3)    the kinds of sentences available;
>
>   (4)    the advisory guideline range;
>
>   (5)    any pertinent policy statements issued by the Sentencing Commission;
>
>   (6)    the need to avoid unwarranted sentence disparities; and
>
>   (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

### 1. Nature of Offense

On a couple of occasions, defendant, a Milwaukee police officer, transported drugs and money between Chicago and Milwaukee, receiving $1000 per trip. He also used his home to store cocaine and drug money, and transact a drug deal. However, there was no evidence that defendant personally sold drugs on the street, or that he engaged in violence or threats, or possessed a weapon in connection with the offense. Nor was there any evidence that defendant used his position as a police officer to facilitate the crime, although, as suggested above, his co-defendants probably believed that his status made him a desirable partner. In sum, though, the offense was somewhat mitigated.

Defendant argued that he was drawn into the drug business due to his own addiction to cocaine. He stated that he skimmed cocaine from the shipments he transported or stored. I accepted that defendant had a serious cocaine problem. However, I did not fully accept that his addiction led to the crime. Defendant transported or handled large amounts of cocaine on several occasions. He also received payment for his services and was involved in negotiating the January 2006 deal. Thus, although his addiction may have played some part, his conduct went beyond an addict tagging along with others to feed his addiction. Further, as a police officer, he certainly should have known better and sought help for his problems. Nevertheless, defendant's explanation for why he did not seek help – that he did not want to be labeled crazy or weak within the department – had some merit. The culture of the department likely dissuades those with mental health or substance abuse issues from seeking help.

6

Case 2:06-cr-00050-LA   Filed 10/30/06   Page 6 of 10   Document 61

## B. Character of Defendant

Defendant was thirty-six years old and had no prior record. He worked as a Milwaukee police officer for nine years, receiving a promotion to detective shortly before his arrest. He worked as a correctional officer and youth counselor for several years before that. He was a high school and college graduate. In sum, he accomplished quite a bit and served the community through his employment. However, to some extent, his accomplishments cut both ways. As a law enforcement officer and counselor, he knew the effects of drugs on our community, and he betrayed the public's trust by contributing to the drug problem.

Defendant's background was also significant for alcohol and drug problems, which he traced to traumatic events in his service as a correctional officer and police officer, as well as the murder of his nephew. It appeared that these problems contributed to the breakdown of his marriage, which in turn caused further stress and depression. Defendant recently began receiving mental health treatment for post-traumatic stress disorder and depression, was prescribed anti-depressants, and seemed to be doing better in this regard. All of his recent screens on pre-trial release were negative.

I received numerous letters attesting to defendant's positive character traits. Defendant's brother Dennis, an FCC field agent, wrote of defendant's kind and generous nature, and detailed the stressors that contributed to the offense. Dennis also discussed the fact that all eight siblings in the family had significant success in life and would provide support for defendant upon release. Defendant's mother wrote that he was a good child and motivated to succeed. A co-worker on the force wrote that defendant helped with the Police Athletic League. Defendant's ex-wife explained how their marriage deteriorated, with fault

7

on both sides, but stated that defendant was a good person and she still supported him. Defendant's ex-mother-in-law wrote of how it became apparent to her how depressed defendant became when his marriage to her daughter ended and how she wished she would have helped him then. I also received supportive letters from defendant's aunt, other siblings, co-workers on the police department, friends, former co-workers with Career Youth Development, and pastors. Many of these friends and family members appeared in court. Defendant clearly had significant support in the community, which spoke to his character and to the probability of his successful re-integration.

**C.     Purposes of Sentencing**

Given his lack of record and positive background, there was no indication that the public needed to be protected from defendant. Similarly, given his lack of previous confinement, substantial prison was not needed to deter him from re-offending. However, there was a need for a substantial period of confinement to promote respect for the law and deter others. Because defendant betrayed the trust placed in him as a police officer, promotion of respect for the law was an important factor in this case. Defendant clearly had substance abuse treatment needs, but under the circumstances I initially had to deal with those issues through recommendations to the Bureau of Prisons ("BOP") and later as conditions of supervised release.

**D.     Imposition of Sentence**

The guidelines called for a term of 57-71 months. I found a sentence slightly below the range sufficient but not greater than necessary. First, the offense was somewhat mitigated, as discussed above. While defendant's involvement was not such that he

deserved a role reduction under § 3B1.2, in considering the nature of the offense under § 3553(a)(1), I did note that it was non-violent, defendant profited minimally, and he never dealt cocaine himself. The fact that defendant was a police officer was certainly significant, but there was no evidence that he traded on that position to facilitate the crime. His unwillingness to perhaps be branded as someone with mental or emotional problems within the department likely contributed to his downfall.

Second, defendant had strong family support, which, coupled with his educational background, would aid in his re-integration into the community and thus make him much less likely to re-offend. Third, and relatedly, he had no prior record and demonstrated genuine remorse for his conduct. The public did not need to be protected from him. The need for just punishment and promotion of respect for law required substantial imprisonment, but a term below the range was sufficient to satisfy that purpose of sentencing.

Fourth, as a former police and correctional officer, prison would likely be more difficult for defendant than other inmates. See Koon v. United States, 518 U.S. 81, 112 (1996). He also lost his job and police pension and would never again work in law enforcement as a result of this offense, which provided an added measure of punishment. See United States v. Wachowiak, 412 F. Supp. 2d 958, 963-64 (E.D. Wis. 2006).

Under all of the circumstances, I found a sentence of 48 months sufficient but not greater than necessary. This sentence struck the proper balance between the need to promote respect for law and deter others, which required a fairly significant prison term given defendant's betrayal of the public's trust, and the significant positives in defendant's character and background, which suggested that significant prison was not needed to protect the public from, or deter, him. Defendant's treatment needs could be served in the

9

community, but punishment had to come first. I recommended that while imprisoned defendant participate in any drug treatment programs available, including the 500 hour program.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 48 months, followed by five years of supervised release. I chose the maximum supervision term recommended by the guidelines to ensure that defendant dealt with his substance abuse and mental health treatment needs, and repaid the buy money. As specific conditions, I required drug and mental health treatment, and repayment of the $22,000 the FBI spent on the controlled buy in which defendant participated. Other conditions appear in the judgment.

Dated at Milwaukee, Wisconsin, this 30th day of October, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge