# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA
        Plaintiff,

    v.                                 Case No. 06-CR-50

LARRY D. WHITE
        Defendant.

---

## DECISION AND ORDER

Defendant Larry White requests early termination of his supervised release. The government opposes the request.

**I.**

In 2006, the government charged defendant, then a City of Milwaukee police officer, with conspiracy to distribute cocaine and distribution of 500 grams or more of cocaine based on evidence that he assisted Melvin Williams, a long-time acquaintance, and Lawrence Matthews, his brother-in-law, in their drug distribution activities. Williams, a Milwaukee dealer, received cocaine from Matthews, who lived in the Chicago area, and defendant aided the enterprise by transporting cocaine and money between the two on several occasions. He also assisted in negotiating a deal for one kilogram, transferring the money and cocaine between Matthews and Williams in his Milwaukee home.

On July 14, 2006, defendant pleaded guilty to the distribution count, and on October 27, 2006, I sentenced him to 48 months in prison followed by 5 years of supervised release. As a condition of supervised release, I ordered defendant to repay $22,000 in buy money expended by the government in the investigation, joint and several with Matthews, at a rate of

not less than $100/month.

Defendant completed the prison sentence in 2009. In August 2012, he filed letters requesting early termination of supervised release. In the letters, he indicated that he obtained early release from prison after completing the drug treatment program, and that during his time on supervision he had been a good, law-abiding citizen, performing volunteer work at the YMCA. He further indicated that he wanted to re-locate to Nashville with his fiancé; he recognized that he could probably transfer his supervision to Tennessee but did not want to "carry this baggage down there." (R. 86 at 1.) He also expressed concern that he would not be treated as well on supervised release in Tennessee as he was in Milwaukee. He acknowledged that he still owed a substantial amount of buy money, which he could not pay off in a lump sum, but he promised to continue making monthly payments. He further asked that this obligation be forgiven or split evenly with Matthews.

In its response, the government agreed that defendant had done well since his release but argued that this is no more than is expected of those on supervision. His desire to move to another state free of the baggage of supervision did not, the government argued, provide a basis for termination. The government also noted that defendant still owed over $18,000 in buy money; while he had been making regular monthly payments, according to the probation office he also reserved extra funds for regular travel. The government recommended that supervision continue with defendant monitored on the probation office's low intensity administrative caseload.

In his reply letter, defendant elaborated on his desire to move to Tennessee, indicating that his fiancé returned there after the death of her father and in order to be closer to her sickly mother. Defendant indicated that he wanted to join her in Nashville and start a new life there.

2

He further indicated that he did not want to be on supervised release after the move because he planned to start a career as a CDL truck driver, which he believed could be hindered by supervision.

## II.

Under 18 U.S.C. § 3583(e)(1), the district court is authorized to terminate supervised release early if: (1) the defendant has completed at least one year; (2) the government is given notice and an opportunity to be heard; and (3) termination is in the interest of justice based on the defendant's conduct and the pertinent sentencing factors under 18 U.S.C. § 3553(a). See United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998). The first two criteria are satisfied in the present case. The issue is thus whether termination would be in the interest of justice.

The district court possesses wide discretion in making this determination. See United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). However, courts have generally concluded that the conduct of the defendant needed to justify termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination. Instead, courts have generally granted early termination only in cases involving some new or unforeseen circumstance, which may include exceptionally good behavior, or where supervision hinders the defendant's rehabilitation. See, e.g., United States v. Kay, 283 Fed. Appx. 944, 946-47 (3d Cir. 2008); United States v. Atkin, 38 Fed. Appx. 196, 198 (6th Cir. 2002); United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997); United States v. Thomas, No. 1:07-CR-72, 2012 WL 3870523, at *2 (N.D. Ind. Sept. 6, 2012); United States v. Bauer, No. 5:09-cr-00980, 2012 WL 1259251, at *2 (N.D. Cal. Apr. 13, 2012); Folks v. United States, 733 F. Supp. 2d 649, 651-52 (M.D.N.C. 2010); Medina, 17 F. Supp. 2d at 246-47. The

3

defendant bears the burden of demonstrating that early termination is justified.  See United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006) (citing United States v. Weintraub, 371 F. Supp. 2d 164, 167 (D. Conn. 2005); United States v. McKay, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005)).

**III.**

While defendant's behavior since his release from prison has been good, I cannot find it sufficient to justify his request.  Volunteer work is laudable, but defendant fails to present evidence that his efforts qualify as extraordinary.  Following the rules, as defendant has done, is no more than the court expects and requires.

Defendant points to the unforeseen circumstances leading to his fiance's move to Tennessee.  However, as he acknowledges, he can apply for a transfer of supervision to another district.  He provides no reason to believe such a request would be refused, and his unexplained fear of worse treatment by the probation office in Tennessee provides no basis for terminating an otherwise appropriate term of supervision.  I appreciate defendant's desire to make a fresh start in a new state, but many defendants likely share that sentiment.

Defendant contends that if he is to be maintained on the probation office's low intensity caseload, which involves paper rather than in-person reporting, he may as well be terminated from supervision entirely.  However, continued supervision will, in addition to the monitoring function, permit the continued collection of the buy money obligation to which defendant agreed in his plea agreement.  See United States v. Daddato, 996 F.2d 903, 905-06 (7th Cir. 1993).

Defendant disputes the government's suggestion that he spends too much on travel, noting that most of his trips are short distance and by car; others were paid for by family or involved attending a funeral and visiting his fiancé.  He admits that he could probably afford

4

more than $100/month, but states that he does not want to pay more than his fair share relative to his co-defendant. I need not make any findings regarding the management of defendant's finances, other than to note that continued supervision is warranted to ensure that he satisfies his court-ordered financial obligations. See 18 U.S.C. § 3553(a)(7).

Defendant asks that I waive or split the buy money obligation in half, but I decline to do that. As noted, defendant agreed to this obligation in his plea agreement, joint and several with Matthews, and the decision to require payment in this fashion is well within the district court's discretion. Further, according to the BOP's website, Matthews was released from prison earlier this year and should be able to contribute to the buy money repayment.

Defendant notes that even if he makes regular payments throughout the five year term he likely won't – absent a substantial contribution from Matthews – pay off the obligation. That defendant cannot repay the entire amount during the supervision term is not a good reason to end his supervision and the obligations that go with it early.

Defendant presents no evidence that supervision will interfere with work as a CDL truck driver. Should his fears materialize, he can seek appropriate modification of travel restrictions or other conditions,[1] or possibly renew his request for termination. At this point, however, his argument that supervision will interfere with his employment is speculative.

Finally, the pertinent § 3553(a) factors support continued supervision. Although there is no indication of current substance abuse, at his original sentencing defendant admitted that he had a serious cocaine addiction, which, he claimed, contributed to his commission of the crime. He also reported mental health issues. He further admitted that he failed to seek help

---

[1]It appears that the probation office has approved frequent travel outside the district.

for his problems prior to his arrest.  Continued supervision is appropriate to ensure that any treatment needs can be addressed, <u>see</u> 18 U.S.C. § 3553(a)(1) & (a)(2)(D),  before they lead to more serious problems, <u>see</u> 18 U.S.C. § 3553(a)(2)(B) & (C).  In imposing sentence originally, "I chose the maximum supervision term recommended by the guidelines to ensure that defendant dealt with his substance abuse and mental health treatment needs, and repaid the buy money."  (R. 61 [Sent'g Mem.] at 10.)  I continue to find this supervision term appropriate.

## IV.

For these reasons,

**IT IS ORDERED** that defendant's request for early termination is **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of October, 2012.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

6